**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THAD AUBERT, | ) |
| | ) |
| Plaintiff, | )   Case No.: 2:18-cv-01329-GMN-EJY |
| vs. | ) |
| | ) |
| JAMES DZURENDA, *et al.*, | )   **ORDER** |
| | ) |
| Defendants. | ) |

Pending before the Court are Plaintiff Thad Aubert's ("Plaintiff's") Motion for Preliminary Injunction, (ECF No. 107), and Motion for Temporary Restraining Order, (ECF No. 108). Defendants James Dzurenda, James Cox, Warden Brian Williams, and Dwight Neven (collectively, "Defendants") filed Responses, (ECF Nos. 109–110). Plaintiff did not file a reply. For the reasons discussed below, the Court **DENIES** Plaintiff's Motions.

**I.    BACKGROUND**

This case arises out of Defendants' alleged failure to provide medical treatment and recommended surgery to Plaintiff while he has been incarcerated with the Nevada Department of Corrections ("NDOC"). (*See* Screening Order 3:24–26, ECF No. 6). In February of 2014, Plaintiff developed the need for a urethroplasty after sustaining complications from the catheter placed in him at the Northern Nevada Correctional Center ("NNCC") in or around October of 2011. (*See id.* 4:12–5:4). In February 2016, Plaintiff alleges that he was sent to the High Desert State Prison ("HDSP") to again receive a urethroplasty. (*See id.* 5:15–16). When he arrived at HDSP, however, Plaintiff states that the doctor he saw did not conduct the surgery because, as

he later learned, the doctor did not perform urethroplasties. (*See id*. 5:18–19). Instead of operating, a physician's assistant conducted an additional diagnostic test. (*See id.* 5:19–21).

In May of 2017, Plaintiff states that his medical condition worsened to the point that he could not urinate. (*See id.* 6:10). When Plaintiff voiced this pain to his unit officer and medical staff at the prison, Plaintiff alleges that they refused to assist him. (*See id.* 6:10–13). Plaintiff then filed an emergency grievance due to his pain. (*See id.* 6:12–13). Because his pain was so severe, Plaintiff's unit officer eventually took Plaintiff to see medical staff at the prison, who called for an emergency medical run at Valley Hospital where Plaintiff received an operation. (*See id.* 6:13–18).

In December of 2017, Plaintiff stated that he again had problems with his catheter. (*See id.* 7:21–22). Nonetheless, as of July 2018, Plaintiff had not received that surgery. (*See id*. 8:2). Plaintiff accordingly brought this lawsuit, requesting that the "[J]udge . . . hold NDOC accountable for [their] actions or lack thereof." (Compl. at 2). The Court, in a Screening Order, (ECF No. 6), permitted Plaintiff to proceed with a claim of Eighth Amendment Deliberate Indifference to Medical Needs against the NDOC Director James Dzurenda, former NDOC Director James Cox, HDSP Wardens Brian Williams and Dwight Neven, Medical Director Romeo Aranas, Nurses Jamie and Christy, and corrections officer Leon.[1] Plaintiff received the surgery that he requested on September 20, 2018. (*See* Min. Order, ECF No. 15).

In the instant Motion, Plaintiff requests a transfer to "single cell living." (Mot. Preliminary Inj. at 3, ECF No. 107). Because of the ongoing smell from his urinary catheter bag, Plaintiff claims that he has been threatened by other inmates who share a cell with Plaintiff. (*Id*. at 2). Plaintiff accordingly seeks injunctive relief ordering NDOC Employees to transfer him to a single cell. (*Id.* at 3).

---

[1] The Court's instructed Plaintiff to provide the names of unidentified defendants when Plaintiff learns of or identifies them. (Screening Order 14:6–19). Plaintiff has not yet identified Defendants Jamie, Christy, and Leon.

## II. LEGAL STANDARD

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). Furthermore, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). "In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734

1  F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, Federal Practice and
2  Procedure, Civil, § 2949 at 471 (1973)).

### III. DISCUSSION

Defendants argue that the Court should deny Plaintiff's Motions for preliminary injunctive relief because Plaintiff seeks relief for an injury that is unrelated to the conduct alleged in his underlying Complaint. (Resp. to Pl.'s Mot. Preliminary Inj. ("Resp.") 4:19–5:18, ECF No. 109). Specifically, because Plaintiff's underlying Complaint alleges NDOC's medical indifference, he cannot seek relief for an unrelated claim of NDOC's failure to protect him from threats arising from the "purported obnoxious smell emitted from his urinary catheter bag." (*Id*. 5:4–13).

To receive injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id*.

Here, Plaintiff's requested injunctive relief is unrelated to the underlying claim in his Complaint. Plaintiff, in his surviving Eighth Amendment claim, requests that the Court hold NDOC officials liable for their deliberate indifference to Plaintiff's medical needs. (Screening Order 11:18–22). In contrast, Plaintiff now requests transfer to a single cell due to ongoing threats by cellmates complaining about the ongoing smell from Plaintiff's urinal bag. (Mot. Preliminary Inj. at 2). Plaintiff's requested relief here stems from his fear for safety and relatedly, NDOC's failure to protect Plaintiff in his current housing situation. (*Id*. at 4–5). Plaintiff's injury, however, does not concern NDOC's indifference to Plaintiff's medical concerns regarding his untreated catheter and urethroplasty as alleged in his underlying

Complaint.  Thus, although the claims both relate to Plaintiff's medical condition, granting Plaintiff transfer to a single cell does not grant "relief of the same character" as to Plaintiff's underlying Eighth Amendment claim. *See Pac. Radiation Oncology, LLC*, 810 F.3d at 636. Without a relationship between the injury to be remedied and the conduct supporting Plaintiff's claim for deliberate indifference, the Court "lacks authority to grant relief." *Id*. at 635. Accordingly, the Court denies Plaintiff's Motions for injunctive relief.[2]

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motions for Preliminary Injunction and Temporary Restraining Order, (ECF Nos. 107–108), are **DENIED**.

**DATED** this __4__ day of January, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[2] Because the claims must be related "as a threshold matter" before delving into the merits for motions requesting injunctive relief, the Court declines to consider the merits of Plaintiff's request for injunctive relief. *See Edwards v. Nevada Dep't of Corr.*, No. 2-19-CV-00806-RFB-VCF, 2020 WL 4925687, at *2 (D. Nev. Aug. 21, 2020) (citing to *Pac. Radiation Oncology*, 810 F.3d 631, 636 (9th Cir. 2015) ("As a threshold matter, 'there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint.'")).